UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Docket No.

CV-10 1457

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 01 2010   ★

LONG ISLAND OFFICE

PHYLLIS SIBILLA and  NANCY SIBILLA,

Plaintiffs,

-against-

FOLLETT CORPORATION d/b/a FOLLETT HIGHER
EDUCATION GROUP,

Defendant.

------------------------------------------------------------------X

**COMPLAINT AND JURY
DEMAND**

WEXLER, J.

TOMLINSON, M

Plaintiffs, by their attorneys, Gabor & Gabor, as and for their Complaint and Jury

Demand, respectfully allege as follows:

**PARTIES**

1.      At all times relevant hereto, Phyllis Sibilla (referred to herein as either "Phyllis

Sibilla" or "Phyllis") was and is a resident and domiciliary of the State of New York, County of

Suffolk with her principal residence located at 95 Poet Street North Babylon, New York 11703.

2.      At all times relevant hereto, Nancy Sibilla (referred to herein as either "Nancy

Sibilla" or "Nancy") , was and is a resident and domiciliary of the State of New York, County of

Suffolk with her principal residence located at 95 Poet Street North Babylon, New York 11703.

3.      At all times relevant hereto, Follett Corporation d/b/a Follett Higher Education

Group (hereinafter referred to as "Follett"), maintains its principal offices located at 2233 West

Street, River Grove, Illinois 60171.  The plaintiffs worked at the 1001 Crooked Hill Road,

Brentwood, New York 11717 address.

1

## VENUE AND JURISDICTION

4.      This is a civil rights action brought by the plaintiffs in order to redress multiple

deprivations by the defendant of plaintiffs' rights secured by the Constitution of the State of New

York, the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act

(ADA), Title VII, the New York State Executive Law Section 290 et. seq., and all applicable

rules and regulations.

5.      Jurisdiction is conferred on the Court by 28 U.S.C. 1331 and 28 U.S.C. 1343(a)

and under the doctrine of supplemental and pendent jurisdiction. Venue in the Eastern District of

New York is appropriate pursuant to 28 U.S.C. 1391 inasmuch as acts and transactions

constituting violations of the above Acts have occurred in this District.

6.      Phyllis Sibilla filed a complaint with the Equal Employment Opportunity

Commission on July 14, 2009.

7.      Nancy Sibilla filed a complaint with the Equal Employment Opportunity

Commission on July 14, 2009.

8.      Both plaintiffs received Right to Sue letters dated February 1, 2010.

9.      This action has been commenced within ninety (90) days of receipt of the Right to

Sue.

10.     The plaintiffs have complied with all jurisdictional prerequisites for commencing

this action.

## NATURE OF THE ACTION

11.     This is an action brought for monetary damages for pain, suffering, humiliation,

2

lost wages and other compensation. This is also an action brought for declaratory, injunctive, equitable and affirmative relief. Exemplary damages, punitive damages, a finding of wilfull with double back pay damages, counsel fees, and the costs and expenses to redress the injuries caused by the acts of the defendant are also sought.

## BACKGROUND AND FACTS

## GENERAL FACTS

12.     Suffolk Community College maintains a bookstore at its Brentwood Campus at 1001 Crooked Hill Road, Brentwood New York 11717.

13.     Among the purposes of the bookstore is to provide a place for students to purchase books used by faculty for their curriculum.

14.     As of 1977 the "Bookstore" was owned and operated under the name Suffolk Bookstore, Inc.

15.     In 1999, Barnes and Noble College Bookstores obtained the rights to operate the Bookstore.

16.     In or about May 2009, Follett submitted the successful bit to acquire the rights to operate the bookstore on the Brentwood Campus of Suffolk Community College.

17.     Both Barnes and Noble and Follett retain the right to hire and fire the employees who work for the bookstores that they operate.

## PHYLLIS SIBILLA

18.     Phyllis Sibilla is a female born in 1951 and is fifty-eight (58) years of age.

19.     Phyllis Sibilla began working at the bookstore located on the Brentwood Campus of Suffolk Community College in 1977.

20.    Phyllis Sibilla's problems first arose after Follett acquired the rights to operate the bookstore on the Brentwood Campus in 2009.

21.    Throughout all of the relevant times herein mentioned, Phyllis Sibilla was a dutiful and diligent employee and handled the various aspects of a College Campus Bookstore in a responsible and professional manner.

22.    When Barnes and Noble acquired the rights to operate the bookstore Phyllis retained her employment under this change in ownership with the title of Assistant Manager.

23.    The Barnes and Noble bookstore on the Brentwood Campus where Phyllis worked was ranked among the best in the Eastern Region.

24.    Phyllis Sibilla's responsibilities as Assistant Manager included, but were not limited to: the bookkeeping of the Bookstore, which lead her to be responsible for maintaining the daily cash logs, billing, the safe, and all other major financial transactions associated with the Bookstore.  She was also responsible to act as Store Manager and as Front End Manager during the "rush."  Phyllis was also responsible for the training and managing of the cashiers.

25.    On or about Memorial Day 2009, it came to Phyllis' attention that the Follett was going to operate the bookstore.

26.    Shortly thereafter, corporate management came in and met with existing employees to review corporate policies and procedures.

27.    On June 8, 2009, T.J. Cochran, the Regional Manager of the defendant, stopped by unexpectedly to the Bookstore to drop off applications while on his way to a Faculty meeting.  He was cold and distant to Phyllis. Cochran asked Phyllis how she managed to work in such a small space.

4

28.     Indeed, the size of the Bookstore is small in relation to the amount of sales transactions.  However, Phyllis took this comment as a discriminatory comment towards her appearance.  Phyllis is 5 feet 3 inches and weighed 271 pounds at that time. Cochran was dismissive towards Phyllis and it was apparent that he did not take her seriously.

29.     Before leaving, Mr. Cochran dropped off the job applications, as the employees had to apply to keep their positions in the Bookstore during the transition. Cochran told Phyllis that defendant usually kept most of the employees from the prior store and the small number that were not rehired had usually left on their own.

30.     On June 10, 2009, Phyllis faxed over her completed Application to Amantha Nyberg, Human Resources of the defendant.

31.     Amantha Nyberg called Phyllis and Nancy's home and spoke with Nancy Sibilla. Nyberg said that management was coming to do a presentation and to interview people on Tuesday, June 16, 2009.

32.     On June 15, 2009, the employees were told to report to the Suffolk Community College Ammerman Campus, for interviews and presentations on June 16, 2009.  Full-time employees were going to have their interviews conducted in the morning, and part-time employees were to be interviewed in the afternoon.  As such, Phyllis was instructed to arrive for the presentation at 10:00 am.

33.     The meeting on June 16, 2009, began with a presentation about the defendant that was presented by T.J Cochran, Amantha Nyberg, and Jeanne Bosbach, a Field Recruitment Manager with the Human Resources Department of defendant.

34.      Shortly after the presentation, Mr. Cochran, Ms. Nyberg, and Ms. Bosbach each

5

interviewed employees. Phyllis was interviewed by Ms. Bosbach.

35.     During the interview, Ms. Bosbach asked how long Phyllis had been working in the Bookstore and her reply was 32 years. Ms. Bosbach asked how long Phyllis worked as an Assistant Manager, and she replied that she started as an Assistant Manager with the original owner 30 years ago. Ms. Bosbach then asked Phyllis about her job, and Phyllis explained, that she was the front end manager during the rush, handling problems that the cashiers might be having, keeping the drawers filled with change and making pulls of the extra money, overseeing the financial aid registers, making sure the cashiers were handling the transactions the correct way, counting all money and making deposits, and fulfilling the website orders. In addition, Phyllis explained that she was in charge of all A/R accounts, ringing in and billing out for payment, logging in all payments and depositing all checks, and that she also had the ability to hire or fire people.  Bosbach repeatedly asked Phyllis whether she opened and closed the store and how many times each week her code was entered in the alarm system. Phyllis said that she commuted with Nancy Sibilla, and whoever walked in first would enter their code. Bosbach asked how many hours Phyllis spent on the floor. Phyllis responded that she did what was necessary to get the job done. Each day was different dependent on the workload, staffing and needs of the customers.  Bosbach also asked Phyllis what she saw in her future and Phyllis said she was very happy doing her job and to be able to continue in the job, Phyllis also told Bosbach that her goals for the Bookstore were to keep it running as well as it was for the benefit of the students.

36.     In the course of the interview, Ms. Nyberg entered the room with Phyllis's resume, because, allegedly,  she thought Ms. Bosbach didn't have a copy and that is when Ms.

6

Bosbach realized that the plaintiffs were sisters. She said that they could not work together and that there were no exceptions.

37.     On June 17, 2009, Nyberg and Bosbach came to the Bookstore and dropped off the plaintiffs' job offers. Phyllis was completely shocked as she was being offered a Full-time Cashier position, which was non-salaried at $9.30 per hour. Phyllis previously had been making $16.69 per hour. Bosbach told Phyllis that she did not do any work at the bookstore and Bosbach implied that Phyllis was a lazy person and a liar.

38.     Phyllis was extremely upset by the defendant's offer. Immediately thereafter, Nyberg and Bosbach asked Phyllis three (3) times if she had anything to say. It appeared that they were trying to goad her into a confrontation. Phyllis responded by saying that it was a lot to process and that she had nothing to say to them at the time.  They left saying she had until June 22, 2009 to accept the offer.

39.     Considering the years of experience Phyllis had at the Bookstore, she considered the offer to be biased and discriminatory based upon her age, gender, and appearance. Specifically, Phyllis believes the defendant viewed her as being disabled because of her weight.

40.     Indeed, Phyllis's beliefs were further strengthened when she learned, that very day, that the defendant kept the Store Manager in the Riverhead Campus Book Store, Renee, Phelps who had only been working there three (3) years. Ms. Phelps did not know the computer system. In addition, Phyllis had to bail her out on numerous occasions, because she still hadn't mastered the Barnes and Noble system.  Phelps is thin.

41.     Furthermore, the defendant  promoted the Riverhead Book Store cashier, Robin, who had only worked there five (5) months, to the Assistant Manager of the store.  Robin is

7

approximately twenty-four (24) years of age and is thin. In addition, they also kept Lori who had been with the Bookstore for nine (9) months. Lori is approximately forty (40)years of age and is much thinner than Phyllis. Upon information and belief, all of these people received raises.

42.     These facts, coupled with the fact that plaintiff, Nancy Sibilla, was demoted from Store Manager of the Bookstore to a Textbook Manager, a position that is subordinate to the Store Manager, Phyllis to believe that the reasons for the plaintiffs' demotions are discriminatory and unlawful.

43.     On June 22, 2009, with no other choice, Phyllis signed and faxed over the job offer.

44.     The next day, June 23, 2009, Ray McGale, the Barnes and Noble Regional Manager, told the plaintiffs that he spoke to a couple of people associated with Suffolk Community College ("SCC") to see if they could do anything about the way Phyllis and Nancy were being treated.

45.     On June 24, 2009, Phyllis heard from various faculty members that the entire faculty was rallying around Phyllis and Nancy and didn't want to lose them at the Bookstore.

46.     On June 25, 2009, Phyllis learned that management of the defendant made statements that Phyllis and Nancy had no management skills and that the jobs and pay that were offered were based on their skills. In addition, management said that Phyllis and Nancy gave poor interviews and they claim that when Phyllis was asked what she did, she replied whatever Nancy told her to do. Management also said that everything for the Bookstore was done by the General Manager of the Ammerman bookstore, which was not true.

47.     Based upon the manner in which Phyllis was being treated, she was constructively

8

discharged. As a result, on July, 20, 2009, Phyllis submitted a letter of resignation.

48.     Cochran appeared to be happy and pleased to receive Phyllis' letter of resignation.

## NANCY SIBILLA

49.     Nancy Sibilla is a woman born in 1957.  Nancy is currently fifty-two (52) years of age.

50.     Nancy Sibilla began working at the Bookstore of the Suffolk County Community College, Brentwood Campus, herein after referred to as "Bookstore" in 1975 when the Bookstore was owned and operated under the name Suffolk Bookstore, Inc.  She continued to be employed by the bookstore after the operation was transferred to Barnes and Noble in or around 1999.

51.     Throughout all of the relevant times herein mentioned, Nancy Sibilla was a dutiful and diligent employee and handled the various aspects of a College Campus Bookstore in a responsible and professional manner. In fact, the Bookstore was ranked among the best in the Eastern Region.

52.     Nancy Sibilla's responsibilities as Store Manager included, but were not limited to: managing and training employees, maintaining a great working relationship with Department Chairs and Professors, overseeing ordering and receiving for both in store and web site sales, all while showing a profit and maintaining a 100% customer satisfaction.

53.     On or about Memorial Day 2009, it came to Nancy's attention that the defendant was going to operate the Bookstore.  At that time, corporate management came in and met with existing employees to review corporate policies and procedures.

54.     On June 8, 2009, T.J. Cochran, the Regional Manager of the defendant, unexpectedly stopped by to drop off applications while on his way to a Faculty meeting.  When

9

Nancy saw that he had arrived, she attempted to greet him in her capacity as Manager. Nancy

extended her hand in an effort to shake hands with him.  However, Cochran did not acknowledge

Nancy and did not shake her hand.  Cochran did speak with Phyllis Sibilla and asked her how she

and Nancy managed in such a small space.  Cochran was dismissive towards Nancy and did not

take her seriously.  Cochran had a male with him who was also extremely rude towards Nancy.

55.     Nancy Sibilla is 5 feet 1 inch and weighs 375 pounds. Nancy believes that

Cochran was dismissive towards her because of her age, gender, height and weight.

56.     Before leaving,  Cochran dropped off the job applications and explained that

employees had to apply in order to keep their positions after the transition.

57.     On June 10, 2009, Nancy faxed over her completed Application to Amantha

Nyberg, who worked in Human Resources for the defendant.

58.     Amantha Nyberg called Nancy at home to verify the application that she sent her

and to advise Nancy that the defendant was going to do a presentation and to interview

candidates on Tuesday, June 16, 2009.

59.     On June 15, 2009, the employees were told to report to Suffolk Community

College Ammerman Campus, for the presentations and interviews on June 16, 2009.  Full-time

employees were going to have their interviews conducted in the morning, and part-time

employees were to be interviewed in the afternoon.

60.     The meeting on June 16, 2009, began with a one (1) hour presentation about the

defendant that was conducted by T.J Cochran, Amantha Nyberg, and Jeanne Bosbach, a Field

Recruitment Manager with the Human Resources Department of defendant.

61.     Shortly after the presentation Mr. Cochran, Ms. Nyberg, and Ms. Bosbach began

to conduct individual interviews with the employees. Nancy was interviewed by Ms. Nyberg.

62.     Ms. Nyberg questioned Nancy concerning how long she had been at the Bookstore, what the Bookstore's profit was and she reviewed Nancy's job description.  Nancy told Nyberg that she had been with the Bookstore for thirty four (34) years, and that during the past semester the Bookstore was rated one of the highest in sales in the region and the highest in used book sales.  Nancy also told Nyberg that her primary responsibilities were to order and receive  books, hire and train employees and to handle scheduling. Nancy also worked closely with the faculty, and administration in order to keep the store running smoothly for the students.

63.     At the conclusion of the interview, Ms. Nyberg asked if there were any problems and whether there was anything that Nancy would like to see in the future.  Nancy responded that there weren't any problems, per se, but that she would like the store to be bigger considering the volume of business.

64.     On June 17, 2009, Nyberg and Bosbach came to the Bookstore and dropped off the offers for Phyllis and Nancy.  Nancy was offered a demotion to a Textbook Manager, a position subordinate to the Store Manager's position.  Additionally Nancy was being offered a salary of $30,000.00 per annum which was $18,000.00 per annum less than what she had been receiving.

65.     Nancy was told by Nyberg and Bosbach that she could not keep her position because the semester was about to begin and they wanted to bring in a current employee of the defendant who was familiar with the computer system.  Nancy reminded them how quickly she learned the Barnes and Noble computer system.  Nancy was given until June 22, 2009, to accept the offer.

66.     The offer of a demotion in title, responsibility and income was the product of unlawful discriminatory animus based on age, gender and disability.  Specifically, Nancy believes the defendant viewed Nancy in a negative light based upon a combination of her weight, gender and age.

67.     Indeed, Nancy's beliefs were further strengthened when she learned that the defendant kept the Store Manager in the Riverhead Campus Book Store, Renee Phelps who had only been working there three (3) years. Ms. Phelps did not know the computer system. In addition, Nancy had to bail her out on numerous occasions, because Phelps had not mastered the Barnes and Noble computer system.  Phelps is thin.

68.     The defendant promoted the Riverhead Book Store cashier, Robin, who had only worked there five (5) months to Assistant Manager of the store.  Robin is approximately twenty-four (24) years of age and is thin. In addition, they also kept Lori who had been with the Bookstore for nine (9) months. Lori is approximately forty (40)years of age and is much thinner than Nancy. Upon information and belief, all of these people received raises.

69.     These facts, coupled with the fact that, Phyllis Sibilla, was demoted from the Assistant Manager of the Bookstore to a Part-time Cashier, led Nancy to believe that the reasons given to her by the defendant for these demotions were false, and that the real reasons were discriminatory.

70.     On June 22, 2009, Nancy signed and faxed over the job offer.

71.     The next day, June 23, 2009, Ray McGale, the Barnes and Noble Regional Manager, indicated that he would speak with a couple of people associated with Suffolk Community College ("SCC") to see if they could do anything about the way the plaintiffs were

12

being treated.

72.    On June 24, 2009, Nancy heard from various faculty members that the entire faculty was rallying around the plaintiffs and did not want them to leave the Bookstore.

73.    Astonishingly, Nancy learned on June 25, 2009, that the defendant told Suffolk Community College that she and Phyllis had no management skills and that the jobs and pay that were offered were based on ability. Further, the defendant told SCC that Nancy gave a poor interview. The defendant further stated that everything for the Bookstore was done by the General Manager of the Ammerman bookstore.

74.    Due to the manner in which the defendant treated Nancy both prior to and after she submitted her acceptance of the demotion, on July, 20, 2009, she handed Cochran a letter of resignation.

75.    Cochran seemed to be quite pleased by the fact that Nancy tendered her resignation.

## AS AND FOR A FIRST CAUSE OF ACTION
## BY PLAINTIFF PHYLLIS SIBILLA FOR
## TITLE VII - GENDER

76.    The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "75" with the same force and affect as if more fully set forth herein.

77.    The defendant has discriminated against Phyllis because of her gender and/or gender plus her weight.

78.    The discrimination consisted of disparate treatment including the refusal to fairly consider Phyllis for the position that she had previously held, to demote Phyllis and then to falsely claim that she underperformed on the job.

13

79.    Gender and/or gender and weight was a motivating factor for the adverse employment action that Phyllis was subjected to.

80.    A reasonable person in Phyllis' shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Phyllis was constructively discharged from her position with the defendant.

81.    Phyllis has been caused to suffer severe emotional and economic damages as a result of this conduct.

82.    The defendant has discriminated against Phyllis with respect to the terms and conditions of her employment, working conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964.

83.    As a result of the defendant's conduct, Phyllis has  been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

### AS AND FOR A SECOND CAUSE OF ACTION
### FOR PLAINTIFF PHYLLIS SIBILLA
### NEW YORK STATE EXECUTIVE LAW - GENDER

84.    The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "83" with the same force and effect as if more fully set forth herein.

85.    The defendant has discriminated against Phyllis because of her gender and/or gender plus her weight.

86.    The discrimination consisted of disparate treatment including the refusal to fairly consider Phyllis for the position that she had previously held, to demote Phyllis and then to falsely claim that she underperformed on the job.

87.    Gender and/or gender and weight was a motivating factor for the adverse

14

employment action that Phyllis was subjected to.

88.     A reasonable person in Phyllis' shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Phyllis was constructively discharged from her position with the defendant.

89.     Phyllis has been caused to suffer severe emotional and economic damages as a result of this conduct.

90.     The defendant has discriminated against Phyllis with respect to her employment terms, working conditions, and privileges of employment in violation of employment in violation of N.Y. Executive Law § 290 et seq.

91.     As a result of the defendant's conduct, plaintiffs have been damaged in the sum of FIVE MILLION ($5,000,000) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR PLAINTIFF PHYLLIS SIBILLA
## AMERICANS WITH DISABILITIES ACT

92.     The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "91" of the Complaint as if more fully set forth herein.

93.     The defendant regarded Phyllis as suffering from a disability.

94.     Phyllis suffers from a disability.

95.     Phyllis suffered adverse employment action.

96.     The defendant's actions were motivated by Phyllis' weight and/or gender and weight.

97.     The fact that the defendant regarded Phyllis as being disabled is a significant reason for the plaintiffs being treated in a disparate manner.

15

98.     A reasonable person in Phyllis' shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Phyllis was constructively discharged from her position with the defendant.

99.     As a result of the defendant's wrongful conduct, the plaintiffs have been caused to suffer severe economic and emotional damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

**AS AND FOR A FOURTH CAUSE OF ACTION
FOR PLAINTIFF PHYLLIS SIBILLA
NEW YORK EXECUTIVE LAW  §296 - DISABILITY**

100.    The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "99" with the same force and effect as if set forth more fully herein.

101.    The defendant regarded Phyllis as suffering from a disability.

102.    Phyllis suffers from a disability.

103.    Phyllis suffered adverse employment action.

104.    The defendant's actions were motivated by Phyllis' weight and/or gender and weight.

105.    The fact that the defendant regarded Phyllis as being disabled is a significant reason for the plaintiffs being treated in a disparate manner.

106.    A reasonable person in Phyllis' shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Phyllis was constructively discharged from her position with the defendant.

107.    As a result of the defendant's wrongful conduct, the plaintiffs have been caused to suffer severe economic and emotional damages in the sum of FIVE MILLION

16

($5,000,000.00) DOLLARS.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR PLAINTIFF PHYLLIS SIBILLA
## AGE DISCRIMINATION IN EMPLOYMENT ACT

108.   The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "107" with the same force and effect as if more fully set forth herein.

109.   The defendant has discriminated against Phyllis on the basis of her age by demoting her, badmouthing her and by treating her in a disparate manner.

110.   A reasonable person in Phyllis' shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Phyllis was constructively discharged from her position with the defendant.

111.   The defendant has discriminated against Phyllis with respect to her employment terms, working conditions, and privileges of employment in violation of Age Discrimination in Employment Act (ADEA).

112.   But for Phyllis' age, she would not have been discriminated against.

113.   As a result of the defendant's conduct, Phyllis has been damaged in the sum of FIVE MILLION ($5,000,000) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR PLAINTIFF PHYLLIS SIBILLA
## NEW YORK STATE LAW - AGE

114.   The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "113" with the same force and effect as if more fully set forth herein.

17

115.    The defendant has discriminated against Phyllis on the basis of her age by demoting her, badmouthing her and by treating her in a disparate manner.

116.    A reasonable person in Phyllis' shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Phyllis was constructively discharged from her position with the defendant.

117.    The defendant has discriminated against Phyllis with respect to her employment terms, working conditions, and privileges of employment in violation of N.Y. Executive Law § 290 et seq.

118.    But for Phyllis' age, she would not have been discriminated against.

119.    As a result of the defendant's conduct, Phyllis has been damaged in the sum of FIVE MILLION ($5,000,000) DOLLARS.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## BY PLAINTIFF NANCY SIBILLA FOR
## TITLE VII - GENDER

120.    The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "119" with the same force and affect as if more fully set forth herein.

121.    The defendant has discriminated against Nancy because of her gender and/or gender plus her weight.

122.    The discrimination consisted of disparate treatment including the refusal to fairly consider Nancy for the position that she had previously held, to demote Nancy and then to falsely claim that she underperformed on the job.

18

123.    Gender and/or gender and weight was a motivating factor for the adverse employment action that Nancy was subjected to.

124.    A reasonable person in Nancy's shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Nancy was constructively discharged from her position with the defendant.

125.    Nancy has been caused to suffer severe emotional and economic damages as a result of this conduct.

126.    The defendant has discriminated against Nancy with respect to the terms and conditions of her employment, working conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964.

127.    As a result of the defendant's conduct, Nancy has  been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

**AS AND FOR A EIGHTH CAUSE OF ACTION
FOR PLAINTIFF NANCY SIBILLA
NEW YORK STATE EXECUTIVE LAW - GENDER**

128.    The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "127" with the same force and effect as if more fully set forth herein.

129.    The defendant has discriminated against Nancy because of her gender and/or gender plus her weight.

130.    The discrimination consisted of disparate treatment including the refusal to fairly consider Nancy for the position that she had previously held, to demote Nancy and then to falsely claim that she underperformed on the job.

131.    Gender and/or gender and weight was a motivating factor for the adverse

19

employment action that Nancy was subjected to.

132.    A reasonable person in Nancy's shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Nancy was constructively discharged from her position with the defendant.

133.    Nancy has been caused to suffer severe emotional and economic damages as a result of this conduct.

134.    The defendant has discriminated against Nancy with respect to her employment terms, working conditions, and privileges of employment in violation of employment in violation of N.Y. Executive Law § 290 et seq.

135.    As a result of the defendant's conduct, plaintiffs have been damaged in the sum of FIVE MILLION ($5,000,000) DOLLARS.

**AS AND FOR A NINTH CAUSE OF ACTION
FOR PLAINTIFF NANCY SIBILLA
AMERICANS WITH DISABILITIES ACT**

136.    The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "135" of the Complaint as if more fully set forth herein.

137.    The defendant regarded Nancy as suffering from a disability.

138.    Nancy suffers from a disability.

139.    Nancy suffered adverse employment action.

140.    The defendant's actions were motivated by Nancy's weight and/or gender and weight.

141.    The fact that the defendant regarded Nancy as being disabled is a significant reason for the plaintiffs being treated in a disparate manner.

20

142.    A reasonable person in Nancy's shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Nancy was constructively discharged from her position with the defendant.

143.    As a result of the defendant's wrongful conduct, the plaintiffs have been caused to suffer severe economic and emotional damages in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

## AS AND FOR A TENTH CAUSE OF ACTION
## FOR PLAINTIFF NANCY SIBILLA
## NEW YORK EXECUTIVE LAW  §296 - DISABILITY

144.    The plaintiffs repeat, reiterate and reallege the allegations contained in paragraphs "1" through "143" with the same force and effect as if set forth more fully herein.

145.    The defendant regarded Nancy as suffering from a disability.

146.    Nancy suffers from a disability.

147.    Nancy suffered adverse employment action.

148.    The defendant's actions were motivated by Nancy's weight and/or gender and weight.

149.    The fact that the defendant regarded Nancy as being disabled is a significant reason for the plaintiffs being treated in a disparate manner.

150.    A reasonable person in Nancy's shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Nancy was constructively discharged from her position with the defendant.

151.    As a result of the defendant's wrongful conduct, the plaintiffs have been caused to suffer severe economic and emotional damages in the sum of FIVE MILLION

($5,000,000.00) DOLLARS.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
### FOR PLAINTIFF NANCY SIBILLA
### AGE DISCRIMINATION IN EMPLOYMENT ACT

152.    The plaintiffs repeat, reiterate and reallege the allegations contained in

paragraphs "1" through "151" with the same force and effect as if more fully set forth herein.

153.    The defendant has discriminated against Nancy on the basis of her age by

demoting her, badmouthing her and by treating her in a disparate manner.

154.    A reasonable person in Nancy's shoes with have felt compelled to resign from the

defendant as a result of the demotion and the manner in which she was being treated. As a result,

Nancy was constructively discharged from her position with the defendant.

155.    The defendant has discriminated against Nancy with respect to her

employment terms, working conditions, and privileges of employment in violation of Age

Discrimination in Employment Act (ADEA).

156.    But for Nancy's age, she would not have been discriminated

against.

157.    As a result of the defendant's conduct, Phyllis has been damaged in the sum of

FIVE MILLION ($5,000,000) DOLLARS.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### FOR PLAINTIFF NANCY SIBILLA
### NEW YORK STATE LAW - AGE

158.    The plaintiffs repeat, reiterate and reallege the allegations contained in

paragraphs "1" through "157" with the same force and effect as if more fully set forth herein.

22

159.   The defendant has discriminated against Nancy on the basis of her age by demoting her, badmouthing her and by treating her in a disparate manner.

160.   A reasonable person in Nancy's shoes with have felt compelled to resign from the defendant as a result of the demotion and the manner in which she was being treated. As a result, Nancy was constructively discharged from her position with the defendant.

161.   The defendant has discriminated against Nancy with respect to her employment terms, working conditions, and privileges of employment in violation of N.Y. Executive Law § 290 et seq.

162.   But for Nancy's age, she would not have been discriminated against.

163.   As a result of the defendant's conduct, Nancy has been damaged in the sum of FIVE MILLION ($5,000,000) DOLLARS.

## JURY DEMAND

164.   Plaintiffs demand a jury trial of this action.

**WHEREFORE,** Plaintiffs demand judgment as follows:

a)   Declaring that the actions, patterns and practices of the defendant, its agents, servants and all those acting in concert with them, constituted, and does constitute, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.; as amended, the Civil Rights Act of 1991 (Pub. L. 102-166); Americans with Disabilities Act (ADA); the New York State Constitution; Age Discrimination in Employment Act (ADEA); the New York State Executive Law Section 290 et seq.; and all applicable rules and regulations, and common law principals.

23

b)      Permanently enjoining the defendant, its agents, servants and all those acting in concert with them, from violating  Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.; as amended, the Civil Rights Act of 1991 (Pub. L. 102-166); Americans with Disabilities Act (ADA); the New York State Constitution; Age Discrimination in Employment Act (ADEA); the New York State Executive Law Section 290 et seq.; and all applicable rules and regulations, and common law principals.

c)      Awarding damages for economic and emotional injuries as well as interest, costs, disbursements, common law, statutory, compensatory, exemplary and pre-judgment interest, pecuniary and non-pecuniary damages and such other and further relief as to this Court deems just and proper;

d)      for a finding that the defendant's conduct was wilfull and that therefore the plaintiffs should be entitled to double back pay damages; and

e)      Awarding counsel fees, costs and disbursements of this action.

Dated: Garden City, New York
       March 31, 2010

Yours etc.,

_____
DAVID G. GABOR (DGG 9979)
GABOR & GABOR
Attorneys for Plaintiffs
400 Garden City Plaza
Suite 406
Garden City, New York 11530
(516) 248-2525

24